David N. Schultz (State Bar No. 123094)
LAW OFFICES OF DAVID N. SCHULTZ
1747 Preuss Road
Los Angeles, California 90035
Telephone:  (310) 839-3150
Email: Schu1984@yahoo.com

L. Marc Zell (*Pro Hac Vice To Be Filed*)
Abraham I. Katsman, *of counsel*
Noam Schreiber, *of counsel*
ZELL & ASSOCIATES INTERNATIONAL ADVOCATES LLC
350 Fifth Avenue, 59th Floor
Empire State Building
New York, NY 10118
Telephone: (212) 971-1349
Fax: (212) 253-4030
Email: mzell@fandz.com
Email: abekatsman@yahoo.com
Email: Schreiber.noam@gmail.com

Attorneys for Plaintiffs Eve Harow, Earl Harow,
Fay Shapiro, Neal Shapiro, and Joel Taubman

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| EVE HAROW, an individual; EARL HAROW, an individual; FAY SHAPIRO, an individual; NEAL SHAPIRO, an individual; and JOEL TAUBMAN, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>AIRBNB, INC., a Delaware corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING ACT; VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT; VIOLATION OF THE UNRUH CIVIL RIGHTS ACT; AND VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Eve Harow and Earl Harow ("the Harows"), Fay Shapiro and Neal Shapiro ("the Shapiros"), and Joel Taubman (collectively, "Plaintiffs"), for their Complaint herein, allege as follows:

**NATURE OF THIS ACTION**

1. This action arises out of the recent decision of Defendant Airbnb, Inc. ("Airbnb") to adopt a policy that intentionally and necessarily discriminates against Jews and Israelis, including citizens of the United States and the State of California, and involves unlawful conduct that the United States and the State of California have long fought to eradicate.  On November 19, 2018, Airbnb announced that it would no longer allow Jews who reside in the geographical area known as "Judea and Samaria," located in the heart of the Land of Israel, to use Airbnb's online-based hospitality and lodging platform to offer their residential dwellings for rent. Referring to "Judea and Samaria" as "the occupied West Bank," Airbnb's announcement specifically stated that it would "remove listings in Israeli settlements in the occupied West Bank that are at the core of the dispute between Israelis and Palestinians."  Airbnb applied this policy (the "Discriminatory Policy" or the "Airbnb Discriminatory Policy") only to residents of Israeli towns in Judea and Samaria; it did not remove listings from any Arab or Palestinian towns located in Judea and Samaria.  Airbnb has not applied its Discriminatory Policy, or any similar policy, to any other geographic area in the world. Moreover, the Airbnb Discriminatory Policy effectively prevents all people anywhere in the world, including residents of California, from using Airbnb's online services to rent in any Jewish communities or Israeli towns located in Judea and Samaria. Finally, because Jews and Israelis cannot practically seek to rent in Arab or Palestinian towns located in Judea and Samaria, because of legal and safety concerns, the Airbnb Discriminatory Policy effectively prevents all Jews and Israelis located anywhere in the world from using Airbnb's online services to rent anywhere in the entire area known as Judea and Samaria or the West Bank.

2. Airbnb did not come to this discriminatory policy on its own.  Human Rights Watch, Inc. ("HRW") played a central role in causing Airbnb to take the steps that eventually led to the wholesale discrimination against Jews.  Through an intensive international media and social media campaign, which included lobbying, meetings, letters, threats, and reports, all aimed at intimidating Airbnb, HRW encouraged, aided and abetted Airbnb to adopt this discriminatory

policy – a policy reminiscent of the Nazi-era boycotts against Jewish business and enterprises in Germany during the 1930s.

3.      As alleged in greater detail below, the anti-Jewish Discriminatory Policy enacted by Airbnb was adopted with the incitement and encouragement of HRW and other organizations associated with the Boycott, Divestment and Sanctions Movement (the "BDS Movement").  The BDS Movement is a global campaign against the State of Israel only, which promotes various forms of boycotts and sanctions against the State of Israel and Israeli businesses, products, and individuals, including widespread commercial, cultural, and academic boycotts and divestment, in order to pressure Israel to meet what the BDS Movement declares are "Israel's obligations under international law" – obligations that the BDS movement does not seek to impose on any other nation.

4.      The anti-Jewish Discriminatory Policy adopted by Airbnb contravenes federal and state law and is repugnant to the core values and mores of the United States and the State of California.  This is especially true now, when anti-Semitism is resurgent throughout the United States and the world.  Although this action cannot end the scourge of resurgent anti-Semitism, it can redress the specific and grievous harm suffered by Plaintiffs, all of whom are Jewish citizens of the United States, and other similarly situated individuals – harm they have suffered as a result of the Discriminatory Policy enacted by Airbnb, with the encouragement and incitement of HRW and the BDS Movement.  Accordingly, this action seeks declaratory relief that the Airbnb Discriminatory Policy violates applicable federal and state law and injunctive relief prohibiting Airbnb from enforcing its newly-enacted Discriminatory Policy.

**THE PARTIES**

5.      Plaintiff Eve Harow is a dual citizen of the United States and Israel. Together with her husband, Plaintiff Earl Harow, Eve Harow currently owns and resides at the residential property located at Tzipporen 4/1 Efrat, Israel, 9043500 (the "Property"), which is located in the Gush Etzion region of Judea and Samaria.  Eve Harow desires to use Airbnb's services to list and rent the Property.  Eve Harow has visited Airbnb's website in order to investigate whether to list and rent the Property using Airbnb.  Because the Property is in the town of Efrat, it is located in

an area classified by Airbnb as an "Israeli settlement[] in the occupied West Bank." Upon information and belief, the Property would meet the requirements set by Airbnb for listing on its website, but for the Airbnb Discriminatory Policy that is the subject of this Complaint. Before moving to Israel, Eve Harow was a citizen and resident of Los Angeles County, California, where she continues to exercise her right to vote in federal and state elections.

6.     Plaintiff Earl Harow is a dual citizen of the United States and Israel. Together with his wife, Plaintiff Eve Harow, Earl Harow currently owns and resides at the Property and desires to use Airbnb's services to list and rent the Property.  Earl Harow has visited Airbnb's website in order to investigate whether to list and rent the Property using Airbnb.  Because the Property is in the town of Efrat, it is located in an area classified by Airbnb as an "Israeli settlement[] in the occupied West Bank." Upon information and belief, the Property would meet the requirements set by Airbnb for listing on its website but for Airbnb's Discriminatory Policy. Before moving to Israel, Earl Harow was a citizen and resident of Los Angeles County, California, where he continues to exercise his right to vote in federal and state elections.

7.     Plaintiff Fay Shapiro is a citizen of the United States and a resident of Los Angeles, California.  Fay Shapiro's sister and brother-in-law reside in the town of Efrat, Israel. Together with her husband, Plaintiff Neal Shapiro, Fay Shapiro has visited her sister and brother-in-law in Efrat on numerous occasions and has rented residential property in Efrat on a previous occasion, before Airbnb was in existence, in order to have a place to stay during such a visit. Fay Shapiro desires to use Airbnb's services to rent residential property in Efrat in connection with future visits to her sister and brother-in-law.  Because Efrat is located in an area classified by Airbnb as an "Israeli settlement[] in the occupied West Bank," Fay Shapiro would be able to rent residential property in the area in connection with future visits to her sister and brother-in-law using Airbnb, but for Airbnb's Discriminatory Policy.

8.     Plaintiff Neal Shapiro is a citizen of the United States and a resident of Los Angeles, California.  Neal Shapiro's sister-in-law and brother-in-law reside in the town of Efrat, Israel.  Together with his wife, Plaintiff Fay Shapiro, Neal Shapiro has visited his sister-in-law and brother-in-law in Efrat on numerous occasions and has rented residential property in Efrat on

a previous occasion, before Airbnb was in existence, in order to have a place to stay during such a visit.  Neal Shapiro desires to use Airbnb's services to rent residential property in Efrat in connection with future visits to his sister-in-law and brother-in-law.  Because Efrat is located in an area classified by Airbnb as an "Israeli settlement[] in the occupied West Bank," Neal Shapiro would be able to rent residential property in the area in connection with future visits to his sister-in-law and brother-in-law using Airbnb, but for Airbnb's Discriminatory Policy.

9.      Plaintiff Joel Taubman ("Taubman") is a citizen of the United States and a resident of Scottsdale, Arizona.  Taubman has visited Israel on numerous occasions and has traveled throughout Judea and Samaria during those visits, including in towns such as Ofra, Kfar Tapuach, Hebron, and Shiloh. Taubman used Airbnb's booking platform to rent residential property in connection with his most recent visit to Israel in 2017. Taubman desires to use Airbnb's services to rent residential property in Judea and Samaria in connection with future visits to Israel.  Taubman would be able to rent residential property in Judea and Samaria in connection with such future visits using Airbnb, but for Airbnb's Discriminatory Policy.

10.     Airbnb is a corporation organized and existing under the laws of the State of Delaware and is qualified to do business as a foreign corporation in the State of California, having registered with the California Secretary of State.  Airbnb maintains its principal executive office at 888 Brandon St. #4, San Francisco, California 94103 and is subject to service of process in this District.

11.     Plaintiffs do not know the true names and capacities of the Defendants sued herein under the fictitious names DOES 1 through 20, inclusive, and Plaintiffs therefore sue said Defendants by such fictitious names pursuant to Section 474 of the California Code of Civil Procedure.  Upon information and belief, each of the Defendants designated as a Doe herein was the agent and/or alter ego of each of the remaining Defendants or is in some manner the cause or contributing cause or otherwise responsible for the events and occurrences herein described, and for the injuries and damages that have been, are being, and will be sustained by Plaintiffs as herein alleged. Plaintiffs will seek leave to amend this Complaint to allege the true names and

capacities of the Doe Defendants, together with such allegations as may be appropriate, when the same have been ascertained.

12.     Upon information and belief, each of the Defendants named herein is in some manner responsible for the acts alleged herein and that, at all times mentioned herein, each of the Defendants was the agent, servant, employee, representative, alter-ego, principal, employer or master of each other Defendant herein and, further, was acting within the scope of such agency, servitude, employment, representation or capacity and/or for the benefit of each other Defendant in doing the acts herein alleged.  (Hereinafter, Airbnb and DOES 1 through 20, inclusive, are collectively referred to as "Defendants.")

13.     Upon information and belief, at all times relevant hereto, each of the Defendants, including each and every fictitiously named defendant, conspired with, aided and abetted, and/or acted in concert with each and every other Defendant to harm, injure and damage Plaintiffs as hereinafter alleged and, in furtherance of the aforesaid conspiracy or other plan, each and every Defendant engaged in one or more of the overt acts hereinafter alleged.

14.     Upon information and belief, each of the Defendants knew, or in the exercise of reasonable care could and should have known, of the existence of the facts by reason of which liability herein is alleged to exist.

**JURISDICTION AND VENUE**

15.     <u>Jurisdiction.</u>  This Court has subject matter jurisdiction over the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1331 and principles of supplemental jurisdiction.  Federal question jurisdiction exists by reason of the claims alleged below, arising under 42 U.S.C. §§ 3606 and 3617. This Court has supplemental jurisdiction over the state law claims alleged in this action, pursuant to 28 U.S.C. § 1367(a), because these claims are so intimately related to claims in the action exclusively within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution and because these claims arise out of the same nexus of facts and events.

16.     This Court has personal jurisdiction over Airbnb pursuant to Fed. R. Civ. P. 4(h), Fed. R. Civ. P. 4(k)(1), and under Sections 410.10 and 416.10 of the California Code of Civil Procedure, because Airbnb maintains its principal place of business in San Francisco, California.

17.     <u>Venue and Intradistrict Assignment.</u>   Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c)(2), because defendant Airbnb resides in the District in which it maintains its principal place of business and is therefore subject to personal jurisdiction in this District.   Venue is proper in this Division pursuant to Local Rule 3-2(d) because this action arises in the county of San Francisco, where Airbnb maintains its principal place of business.

**RELEVANT FACTUAL ALLEGATIONS**

***AIRBNB'S BUSINESS***

18.     Airbnb is a privately held global company headquartered in San Francisco, California.   Airbnb operates an online marketplace, booking, brokerage and hospitality service related to the business of renting residential dwellings and other public accommodations. Airbnb's booking platform serves as a facility related to the business of renting residential dwellings, such as the Property and the Units.   Airbnb's services are accessible via its website and mobile applications.

19.     Airbnb structures its business as a membership organization, generally requiring users to register as "members" of the organization in order to utilize its booking and brokerage services.   Members can use the service to arrange or offer lodging, primarily home stays or tourism experiences.   Airbnb generally charges a commission for each booking confirmed through its services. Airbnb facilitates the ability of owners of residential dwellings to engage in the business of renting residential dwellings to members in countries around the world, including the United States.

***HISTORICAL BACKGROUND OF JUDEA AND SAMARIA***

**The Region Before 1948**

20.     Since biblical times, Judea and Samaria have been part and parcel of the Land of Israel, as reflected in the Hebrew Bible, the Christian Bible, and an unbroken line of historical and archaeological sources spanning more than 3,000 years.   Nearly 2,000 years ago, the Roman

Empire conquered the Land of Israel, expelled most of its inhabitants, and renamed the area "Palestine."  Although the area subsequently was conquered and reconquered numerous times and was ruled by various empires over the centuries, some Jewish presence always remained, uninterrupted, in the Land of Israel, and there was no significant economic development of the area under any of these empires.

21.   For 400 years, beginning in 1517 and continuing until 1917, the area was controlled by the Ottoman Empire.  Beginning in the 19th Century, significant numbers of Jews began to return to the area.  These Jews purchased tracts of land, drained swamps, reclaimed land that had been largely uninhabited for centuries, and established new Jewish farms and towns. The economic development and opportunities brought about by the growing Jewish presence in the area also drew large numbers of Arabs to the area from elsewhere in the Middle East.

22.   In 1917, the Ottoman Empire fell to the Allied Powers during World War I. Under the League of Nations Covenant and Mandate and the 1920 Treaty of San Remo, Great Britain accepted the Palestine Mandate, an area primarily comprising what today are the lands of Jordan and Israel, including Judea and Samaria.  The Mandate gave legal effect to the 1917 Balfour Declaration, the British policy to "favour the establishment in Palestine of a national home for the Jewish people."

23.   In 1921, Great Britain unilaterally divided Palestine along the Jordan River and established an Arab entity of Transjordan on the 78% of the land included in the Palestine Mandate that was east of the Jordan River.  The League of Nations Covenant and Mandate provided that, for the remaining 22% of the land, located between the Jordan River and the Mediterranean Sea, the Mandatory Power was required to facilitate the close settlement of the Jewish People in *all* areas west of the Jordan River within the Palestine Mandate, including Judea and Samaria. During the Palestine Mandate, the Hebrew name *Eretz Yisrael* ("Land of Israel") was part of the official name for the Palestine Mandate territory between the Jordan River and the Mediterranean Sea.

24.     Upon the creation of the United Nations and the adoption of the United Nations Charter in San Francisco in 1945, the League of Nations ceased to exist but the provisions of the Palestine Mandate continued in force through Article 80 of the United Nations Charter.

25.     In early 1947, Great Britain announced that it would abandon the Palestine Mandate and have the United Nations determine the future of Palestine.   Thereafter, in November 1947, the United Nations General Assembly, by a two-thirds vote, adopted non-binding Resolution 181, which recommended that the Palestine Mandate be divided into a Jewish state and an Arab state.   Under the terms of the resolution, Judea and Samaria were to be allocated to the Arab state.   The surrounding Arab states in the Middle East, however, on their own behalf and on behalf of the Arabs residing within the Palestine Mandate, rejected Resolution 181 and chose to use force to prevent its implementation.   As a result, Resolution 181 was never approved by the United Nations Security Council and was never implemented.

**Israel Declares Its Independence In 1948**

26.     In May 1948, when the Palestine Mandate expired, the State of Israel was declared. Eleven minutes after the State of Israel was declared, the United States was the first country to recognize the State of Israel.

27.     Almost immediately, Arab states throughout the Middle East and Palestinian Arab forces already operating clandestinely within the country attacked Israel. The fighting between Israel and these Arab states ended in 1949 with the signing of a series of armistice agreements between Israel and the Arab states, including the Hashemite Kingdom of Transjordan, known today as Jordan.

28.     At the time of the signing of the armistice agreements, the Arab forces held Judea and Samaria, including land which Jews had purchased and settled in before 1948.  For example, Efrat, where the Harows reside, is part of Gush Etzion, a bloc of Jewish towns and farms founded south of Jerusalem on land purchased and settled by Jews beginning in the 1920s.  After the United Nations approved the plan to divide the Palestine Mandate into a Jewish state and an Arab state, Arab forces began to attack Gush Etzion.  As a result, women and children who lived in the Gush Etzion bloc were evacuated while the men stayed behind to defend the area.  In early

May 1948, Arab forces attacked Kfar Etzion, a kibbutz located in the region, and forced the kibbutz to surrender.   129 Jewish fighters died, most of whom were massacred *after* surrendering.  Moreover, Transjordan refused to allow these men to be buried or their remains to be gathered for more than one year after their death.

29.     Under the terms of the 1949 armistice agreements between Israel and the Arab states, as insisted upon by the Arab states, the armistice demarcation line between Judea and Samaria and the rest of Israel (the "Green Line") was not to be construed as a permanent border or a political or territorial boundary.  At that time, no Arab state recognized Israel or even attempted to negotiate a peace treaty with Israel.

30.     In violation of international law, the Kingdom of Transjordan annexed Judea and Samaria in 1950 and renamed the area the "West Bank," in order to blur the longstanding Jewish ties to this area. Judea and Samaria is thus also known today as the "West Bank," its Jordanian name.  The annexation of Judea and Samaria was condemned and was not recognized by other nations, except for recognition by Great Britain and Pakistan.

31.     During the 19-year period from 1949 until 1967 that Jordan occupied Judea and Samaria, no Jews were allowed to reside in or travel to Judea and Samaria, including the Old City of Jerusalem.  All existing Jewish communities in Judea and Samaria, some of which had existed for centuries, were destroyed, the surviving Jewish residents were expelled, and the land was delivered into the hands of Palestinian Arabs under Jordan's Absentee Property legislation.

**The Six-Day War Begins In 1967**

32.     In May 1967, the armies of Egypt, Syria, Lebanon and Jordan surrounded Israel and began to mass troops on Israel's borders.  Egypt expelled United Nations peacekeeping forces from the Sinai Peninsula and blocked Israeli shipping through the Red Sea by closing the Straits of Tiran.

33.     In late May and early June 1967, Arab leaders, including from Egypt, Jordan, Iraq, and Syria, made numerous public pronouncements about their desire to destroy and annihilate Israel.  For example, President Nasser of Egypt stated that "[o]ur basic objective will be the destruction of Israel" and Syria's then-defense minister (and subsequent president) Hafez

Assad stated that Syria's forces were "ready … to initiate the act of liberation itself, and to explode the Zionist presence in the Arab homeland" and that "I, as a military man, believe the time has come to enter into a battle of annihilation."   In addition, leaders of the Palestine Liberation Organization ("PLO"), which had been founded in 1964 with the express purpose of "liberating" all territory controlled by Israel through "armed struggle," stated that "[w]e shall destroy Israel and its inhabitants and as for the survivors – if there are any – the boats are ready to deport them."

34.     Surrounded and heavily out-manned and out-armed, Israel launched a surprise attack against the Egyptian air force on June 5, 1967, destroying most of it on the ground.  Israel did not attack Jordanian forces, and instead sent messages to King Hussein of Jordan stating that Israel would not attack if Jordan did not enter the fighting.   Nevertheless, Jordanian forces attacked Israel from the West Bank and eastern Jerusalem and shelled Tel Aviv and the Jewish western neighborhoods of Jerusalem, causing hundreds of civilian casualties.  Acting in self-defense under Article 51 of the United Nations Charter, Israel struck back and eventually captured Judea and Samaria, as well as Jerusalem, from Jordanian control.  This fighting became known as the "Six-Day War".

35.     On June 19, 1967, shortly after the end of the Six-Day War, Israel offered to give up nearly all territory captured in the war in exchange for a peace treaty.  The Arab League responded with what is known as the "Khartoum Resolution," which provided for "no peace with Israel, no recognition of Israel, no negotiations with it ..."

**Judea and Samaria Following The Six-Day War**

36.     Following the Six-Day War, Israel established a military administration in the West Bank.  Israel allowed its citizens, including survivors of communities that had been Jewish before they were destroyed in 1948 by Arab armies and Jordanian administration, to reclaim and resettle some of these communities and establish new communities, consistent with Israel's legal and historical rights.   The first such community was Kfar Etzion, which was resettled by evacuees from 1948, many of whom were the orphan children of the massacred surrendering Jews described above.  These are the Jewish "settlements" where the Airbnb Discriminatory

Policy refuses to list rentals, such as Gush Etzion, which includes the towns of Kfar Etzion and Efrat.

37.     Judea and Samaria are currently administered by the State of Israel in accordance with the "Oslo Accords," which were entered into between Israel and representatives of the PLO in 1993.  Under the Oslo Accords, Judea and Samaria were divided into three areas for purposes of allocating administrative functions between Israel and the Palestinian Autonomous Authority (the "PA").  In Area A, which includes all major Palestinian population centers, the PA has plenary authority, including over security matters.  In Area B, the PA exercises full civil administrative jurisdiction, subject to Israeli control over security matters.  Almost 95% of West Bank Palestinians live in Areas A and B.  In Area C, where all Jewish communities are situated, Israel exercises plenary administrative jurisdiction, including over Palestinian Arab habitats.

38.     The Jewish communities in the Area C portion of Judea and Samaria are home to more than 500,000 Jews, including thousands of United States citizens and citizens of California. These Jews include the Harows, who own the Property in Efrat, and the sister and brother-in-law of Fay Shapiro, who reside in Efrat.

39.     Israeli Jews are legally prohibited from entering Area A because of the potential danger.  Entry to Area B is not advisable for similar safety and legal reasons.  Furthermore, under Palestinian land laws, it is a capital crime to sell property to Israelis and to non-Israeli Jews.  Therefore, the only places in Judea and Samaria where a Jew may purchase property and rent it out are in the towns and settlements of Area C – precisely the area where the Airbnb Discriminatory Policy bars listing such rentals.  The Discriminatory Policy thus prevents all Jews and Israelis, and only Jews and Israelis, including United States citizens such as the Harows, from listing properties anywhere in Judea and Samaria.

40.     Furthermore, as the history set forth above shows, "Israeli settlements in the occupied West Bank" are hardly "at the core of the dispute between Israelis and Palestinians" – Airbnb's stated justification for its Discriminatory Policy.

1

***AIRBNB ADOPTS ITS ANTI-JEWISH DISCRIMINATORY POLICY***

2       41.     Until November 19, 2018, Airbnb offered its services to all persons owning

3    residential dwellings and accommodations in all communities in Judea and Samaria, without

4    regard to the religion, ethnicity or national origin of the owner of the residential dwelling or

5    accommodation.

6       42.     Before November 19, 2018, Airbnb publicly asserted that it was permitted by law

7    to provide its platform and services to Jews and Israelis in Judea and Samaria, and that it would

8    continue to do so.

9       43.     Airbnb's policy and practice until November 19, 2018 was consistent with its

10   general policy of non-discrimination on the basis of race, religion, national origin, ethnicity,

11   disability, sex, gender identity, sexual orientation, or age (the "Airbnb Non-Discrimination

12   Policy"), which is found at the URL https://www.airbnb.com/terms/nondiscrimination_policy.

13   The Airbnb Non-Discrimination Policy states, among other things, that "Airbnb is, at its core, an

14   open community dedicated to bringing the world closer together by fostering meaningful, shared

15   experiences among people from all parts of the world. Our community includes millions of

16   people from virtually every country on the globe. It is an incredibly diverse community, drawing

17   together individuals of different cultures, values, and norms."

18      44.     Consistent with the Airbnb Non-Discrimination Policy, until November 19, 2018,

19   Airbnb rebuffed calls from representatives of the BDS Movement and other anti-Israel and anti-

20   Semitic organizations and activists to refuse to provide its platform and services to Jews and/or

21   Israelis seeking to offer their residential dwellings for rent in Judea and Samaria.

22      45.     HRW is an international non-governmental organization, headquartered in New

23   York City. HRW originally was founded in 1978 under the name Helsinki Watch, to monitor the

24   then-Soviet Union's compliance with the Helsinki Accords. Following the demise of the Soviet

25   Union, however, HRW changed course and began a wildly disproportionate negative focus on

26   Israel. In a column entitled "Rights Watchdog, Lost in the Mideast," that appeared in the October

27   19, 2009 edition of the New York Times, human rights activist Robert L. Bernstein, one of

28   HRW's founders, excoriated HRW's anti-Israel turn and criticized HRW for ignoring severe

human rights violations in closed societies, for its anti-Israel bias, and for "issuing reports…that are helping those who wish to turn Israel into a pariah state." Bernstein observed in the column that HRW "has written far more condemnations of Israel for violations of international law than of any other country in the region," even though the region "is populated by authoritarian regimes with appalling human rights records."

46.     Upon information and belief, HRW waged a campaign to encourage, aid and abet Airbnb to depart from the Airbnb Non-Discrimination Policy and instead adopt the Airbnb Discriminatory Policy, a policy that targeting residential dwellings and accommodations owned by Jews in Judea and Samaria and persons seeking to rent such accommodations.

47.     Upon information and belief, Airbnb conspired with HRW and the BDS Movement to enact its Discriminatory Policy, which discriminates against Jews, including Jewish citizens of the United States and California, in violation of federal law and California state law.

48.     Upon information and belief, representatives of HRW met with representatives of Airbnb before November 19, 2018, for the purpose of encouraging Airbnb to change its policy towards Judea and Samaria.  HRW sent letters to Airbnb whose purpose was to convince and encourage Airbnb to change the Airbnb Non-Discriminatory Policy as it applied to Judea and Samaria.  Upon information and belief, HRW also threatened Airbnb with consequences, including possibly encouraging a worldwide boycott of Airbnb, should Airbnb fail to adopt a new policy that would discriminate against Jews with respect to residential dwellings and accommodations in Judea and Samaria.

49.     On November 19, 2018, Airbnb adopted its Discriminatory Policy, under which Airbnb agreed to "remove listings in Israeli settlements in the occupied West Bank that are at the core of the dispute between Israelis and Palestinians."  Upon information and belief, Airbnb adopted its Discriminatory Policy in response to incitement, threats, and encouragement by representatives of the BDS Movement and other anti-Israel and anti-Semitic organizations, including HRW.

50.     On November 19, 2018, in connection with its adoption of the Discriminatory Policy, Airbnb issued a press release (the "Press Release"), which states as follows:

> There are conflicting views regarding whether companies should be doing business in the occupied territories that are the subject of historical disputes between Israelis and Palestinians.
>
> US law permits companies like Airbnb to engage in business in these territories. At the same time, many in the global community have stated that companies should not do business here because they believe companies should not profit on lands where people have been displaced. Others believe that companies should not withdraw business operations from these areas.
>
> For us, the question centers on the approximately 200 Airbnb listings in Israeli settlements in the West Bank and whether they should be available for rent on our platform. We are most certainly not the experts when it comes to the historical disputes in this region. Our team has wrestled with this issue and we have struggled to come up with the right approach.
>
> In the past, we made clear that we would operate in this area as allowed by law. We did this because we believe that people-to-people travel has considerable value and we want to help bring people together in as many places as possible around the world. We also explained that going forward we would ask questions, listen to experts, seek out our community for their thoughts, and continue to learn.
>
> Since then, we spent considerable time speaking to various experts — including those who have criticized our previous approach — about this matter. As a global platform operating in 191 countries and regions and more than 81,000 cities, we must consider the impact we have and act responsibly. Accordingly, we have developed a framework for evaluating how we should treat listings in occupied territories.
>
> […]
>
> When we applied our decision-making framework, we concluded that we should remove listings in Israeli settlements in the occupied West Bank that are at the core of the dispute between Israelis and Palestinians.

The full text of the Press Release describing Airbnb's new Discriminatory Policy may be found at the URL https://press.airbnb.com/listings-in-disputed-regions.

51.     Judea and Samaria include both Jewish/Israeli cities, villages, and towns and Arab/Palestinian cities, villages and towns.  The Airbnb Discriminatory Policy effectively targets only those residential dwellings and accommodations in Judea and Samaria that are owned or

managed by Jews.  The Airbnb Discriminatory Policy does not affect the listings of residential dwellings and accommodations in any Arab and Palestinian cities, villages and towns located in Judea and Samaria and does not affect any residential dwellings and accommodations that are owned or managed by Arabs, Palestinians or other non-Jews.

52.   Airbnb made the decision to enact the Airbnb Discriminatory Policy knowing that this policy excludes listings for residential dwellings and accommodations owned predominately, if not exclusively, by Jews and/or Israelis and that this policy effectively prevents Jews and Israelis throughout the world, including United States citizens, from renting residential dwellings and accommodations in Judea and Samaria.  Airbnb adopted the Airbnb Discriminatory Policy knowing of the discriminatory effects that the policy would have.

53.   On November 19, 2018, the same day that Airbnb adopted its Discriminatory Policy and issued the Press Release, HRW praised Airbnb's decision and stated that "[t]he decision by Airbnb to stop listing properties in unlawful Israeli settlements in the occupied West Bank is a positive step that other global tourism companies should follow."

54.   The following day, on November 20, 2018, HRW published a 65-page report entitled "Bed and Breakfast on Stolen Land: Tourist Rental Listings in West Bank Settlements." (the "HRW Report").  In the HRW Report, which may be found at the URL https://www.hrw.org/report/2018/11/20/bed-and-breakfast-stolen-land/tourist-rental-listings-west-bank-settlements, HRW "urge[d] Airbnb and Booking.com to stop listing properties in settlements."

55.   HRW encouraged Airbnb to adopt the Airbnb Discriminatory Policy well aware of the discriminatory effects that the policy would have.

56.   Airbnb's adoption of the Discriminatory Policy regarding Judea and Samaria, and its removal of listings "in Israeli settlements in the occupied West Bank," denies the owners of residential dwellings and accommodations in these areas, including the Harows, access to, and/or participation in, Airbnb's booking and brokerage services, organization, and facilities and other services related to the business of renting their residential dwellings and accommodations.

57.     Airbnb's adoption of the Airbnb Discriminatory Policy regarding Judea and Samaria, and its removal of listings "in Israeli settlements in the occupied West Bank," denies prospective renters of residential dwellings and accommodations in these areas, including the Shapiros and Taubman, access to these residential dwellings and accommodations and/or participation in Airbnb's booking and brokerage services, organization, and facilities and other services related to the business of renting residential dwellings and accommodations.

58.     Airbnb's decision to adopt the Airbnb Discriminatory Policy and remove listings "in Israeli settlements in the occupied West Bank" discriminates against Jews and/or Israelis on its face and in effect on the basis of race, religion and national origin.

59.     Plaintiffs have been injured and continue to be injured and suffer damage as a result of Airbnb's illegal and discriminatory practice and policy of excluding from its brokerage and booking services and platform residential dwellings and accommodations located in areas that Airbnb classifies as "Israeli settlements in the occupied West Bank."

60.     On or about January 17, 2019, Airbnb issued another press release in which it reaffirmed that it was removing listings in areas that Airbnb classifies as "Settlements in the West Bank" from its online brokerage and booking services and platform.  Airbnb's press release further stated, among other things, that it was removing listings in South Ossetia and Abhkazia from its online brokerage and booking services and platform.  South Ossetia and Abhkazia are areas in Georgia that are currently occupied by Russia.

61.     Airbnb's decision to remove listings in South Ossetia and Abhkazia is significantly different from its decision to enact the Airbnb Discriminatory Policy with respect to the areas that Airbnb classifies as "Israeli settlements in the occupied West Bank."  Airbnb's decision to remove listings in South Ossetia and Abhkazia applies to these entire regions and impacts communities of Russians, Georgians, and Abhkazians located in these regions in the same way.  By contrast, the Airbnb Discriminatory Policy only applies to areas that Airbnb classifies as "Israeli settlements in the occupied West Bank."  Therefore, the Discriminatory Policy only impacts listings in communities of Jews and Israelis in Judea and Samaria.  The policy has no impact on any communities of Arabs and/or Palestinians in the same region.

Moreover, the Discriminatory Policy only impacts Jews and Israelis anywhere in the world who wish to rent accommodations in Judea and Samaria.  It does not impact non-Jews, who are still able to rent accommodations in Arab or Palestinian towns in Judea and Samaria using Airbnb.

### AIRBNB'S TERMS OF SERVICE DO NOT APPLY TO THIS ACTION

62.     Airbnb maintains a website which may be found at the URL http://www.airbnb.com (the "Website").  The Website includes Airbnb's Terms of Service.

63.     According to the Terms of Service, "By accessing or using the Airbnb Platform, you agree to comply with and be bound by these Terms of Service."

64.     Section 19.4 of the Terms of Service provides for mandatory arbitration of disputes as follows:

> Agreement to Arbitrate. You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, the Group Payment Service, or the Collective Content (collectively, "Disputes") will be settled by binding arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.

65.     Section 19.6 of the Terms of Service provide as follows:

> Arbitration Rules and Governing Law. This Arbitration Agreement evidences a transaction in interstate commerce and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. The arbitration will be administered by AAA in accordance with the Consumer Arbitration Rules and/or other AAA arbitration rules determined to be applicable by the AAA (the "AAA Rules") then in effect, except as modified here. The AAA Rules are available at www.adr.org or by calling the AAA at 1–800–778–7879.

66.     Section 19.10 of the Terms of Service provides as follows:

> Jury Trial Waiver. You and Airbnb acknowledge and agree that we are each waiving the right to a trial by jury as to all arbitrable Disputes.

67.     Section 21.1 of the Terms of Service provides as follows:

If your Country of Residence is the United States, these Terms will be interpreted in accordance with the laws of the State of California and the United States of America, without regard to conflict-of-law provisions. Judicial proceedings (other than small claims actions) that are excluded from the Arbitration Agreement in Section 19 must be brought in state or federal court in San Francisco, California, unless we both agree to some other location. You and we both consent to venue and personal jurisdiction in San Francisco, California.

68.     Section 21.3 of the Terms of Service provides as follows:

If your Country of Residence is outside of the United States and China, these Terms will be interpreted in accordance with Irish law. The application of the United Nations Convention on Contracts for the International Sale of Goods (CISG) is excluded. The choice of law does not impact your rights as a consumer according to the consumer protection regulations of your Country of Residence. If you are acting as a consumer, you agree to submit to the non-exclusive jurisdiction of the Irish courts. Judicial proceedings that you are able to bring against us arising from or in connection with these Terms may only be brought in a court located in Ireland or a court with jurisdiction in your place of residence. If Airbnb wishes to enforce any of its rights against you as a consumer, we may do so only in the courts of the jurisdiction in which you are a resident. If you are acting as a business, you agree to submit to the exclusive jurisdiction of the Irish courts.

69.     Airbnb's Terms of Service constitutes a "browse-wrap" agreement, which does not require any type of express manifestation of assent. Plaintiffs never manifested any assent to the Terms of Service because they did not actually know of the Terms of Service.

70.     Plaintiffs did not have constructive notice of the Terms of Service because the Terms of Service were not conspicuously placed on Airbnb's website.

71.     The Harows and the Shapiros have not agreed to comply with or be bound by the Terms of Service because they are not currently members of Airbnb and have not used the Airbnb Platform to list or rent residential dwellings or accommodations.

72.     For all the above reasons, the Terms of Service do not constitute a binding contract between Airbnb and the Plaintiffs and Airbnb may not enforce the Terms of Service against the Plaintiffs.

73.     This action alleges anti-discrimination claims against Airbnb based on the Airbnb Discrimination Policy.

74.     Because this action involves anti-discrimination claims against Airbnb, the mandatory arbitration provision and the jury waiver provision in Airbnb's Terms of Service are void as a matter of California public policy.  For this reason as well, Airbnb may not enforce the mandatory arbitration provision and the jury waiver provision in its Terms of Service.

### FIRST CLAIM FOR RELIEF

### (Violation of the Fair Housing Act Against All Defendants)

75.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

76.     Airbnb operates an online business that provides a platform and listing service for individuals such as Plaintiffs to list, discover and rent both short-term and long-term residential dwellings and accommodations.

77.     The homes and properties, including the Property owned by the Harows, the residential property that the Shapiros may wish to rent in Efrat and the residential property that Taubman may wish to rent in Judea and Samaria, and those referred to above, are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

78.     The actions of Defendants, and each of them, including the actions of Defendant Airbnb, violate the provisions of 42 U.S.C. § 3604, which states, in pertinent part, that:

it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

79.     The actions of Defendants, and each of them, alleged above, including the actions of Defendant Airbnb, constitute discrimination on account of race, religion and national origin in violation of the above provisions.

80.     The actions of Defendants, and each of them, including the actions of Defendant Airbnb, also violate the provisions of 42 U.S.C. § 3606, which states, in pertinent part, that:

it shall be unlawful to deny any person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or to discriminate against him in the terms or conditions of such access, membership, or participation, on account of race, color, religion, sex, handicap, familial status, or national origin.

81.     The actions of Defendants, and each of them, alleged above, including the actions of Defendant Airbnb, constitute discrimination on account of race, religion and national origin in the denial of access to, membership and participation in a service relating to the business of renting dwellings.

82.     The actions of Defendants, and each of them, including the actions of Defendant Airbnb, also violate 42 U.S.C. § 3617, which states, in pertinent part, that:

it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

83.     The actions of Defendants, and each of them, alleged above constitute interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons in the exercise or enjoyment of, rights granted or protected by the Fair Housing Act.  The actions of Defendants, and each of them, also constitute coercion, intimidation, and threats to persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons in the exercise or enjoyment of, rights granted or

protected by the Fair Housing Act. In taking the actions alleged above, Defendants, and each of them, acted intentionally, willfully, and in disregard of the federally protected rights of others.

84.     Plaintiffs are "aggrieved persons" within the meaning of 42 U.S.C. §3602(i) and have suffered harm and damages as a direct result of the Airbnb Discriminatory Policy. Defendants are liable to Plaintiffs for any and all damages that Plaintiffs have sustained as a result of Defendants' conduct.

85.     Plaintiffs have suffered harm and damages as a direct result of Defendants' violation of 42 U.S.C. § 3617, in that, under the Airbnb Discriminatory Policy, the Harows are unable to list their Property on Airbnb's website and the Shapiros and Taubman are unable to rent residential dwellings in Judea and Samaria on Airbnb's website. Plaintiffs, and each of them, thus are unable to benefit economically from Airbnb's services. Defendants are liable to Plaintiffs for any and all damages that Plaintiffs have sustained as a result of the conduct of Defendants, and each of them.

**SECOND CLAIM FOR RELIEF**

**(Violation of the California Fair Employment and Housing Act**

**Against All Defendants)**

86.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

87.     The California Fair Employment and Housing Act ("FEHA") is set forth in Sections §§12900 *et seq.,* of the California Government Code. Section 12955(i) of FEHA states as follows:

> It shall be unlawful:
>
> For any person or other organization or entity whose business involves real estate-related transactions to discriminate against any person in making available a transaction, or in the terms and conditions of a transaction, because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, source of income, familial status, disability, or genetic information.

88.     Section 12955(j) of FEHA states as follows:

It shall be unlawful:

To deny a person access to, or membership or participation in, a multiple listing service, real estate brokerage organization, or other service because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, ancestry, disability, genetic information, familial status, source of income, or national origin.

89.     Section 12955(k) of FEHA states as follows:

It shall be unlawful:

To otherwise make unavailable or deny a dwelling based on discrimination because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, source of income, disability, genetic information, or national origin.

90.     Defendants, and each of them, including Defendant Airbnb, have violated Sections 12955(i), (j) and (k) of the FEHA by adopting the Airbnb Discriminatory Policy, which prevents Plaintiffs from using Airbnb's platform solely because Plaintiffs either are Jews who own property in Judea and Samaria or are Jews who wish to rent a residential dwelling in Judea and Samaria. By adopting the Airbnb Discriminatory Policy, Defendants, and each of them, including Defendant Airbnb, have made a "dwelling" unavailable based on religion and/or national origin.

91.     As a direct and proximate result of the violation of the FEHA by Defendants, and each of them, and as a result of the facts alleged herein, Plaintiffs have suffered and will continue to suffer damages in an amount not yet ascertained, in addition to other and as yet unascertainable damages.  Plaintiffs will seek leave of this Court to amend this Complaint when the amount of its damages has been precisely ascertained.

### THIRD CLAIM FOR RELIEF

### (Violation of California's Unruh Civil Rights Act

### Against All Defendants)

92.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

93.     California's Unruh Civil Rights Act is set forth in Section 51 *et seq.* of the California Civil Code.  Section 51.5 of the California Civil Code states, in pertinent part, that "[n]o business establishment…shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person … on account of any characteristic" based on sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation.

94.     By adopting the Airbnb Discriminatory Policy, Defendants, and each of them, including Defendant Airbnb, have discriminated against the Harows and other Jews based on their religion and national origin, in violation of the Unruh Civil Rights Act, by discriminating against the Harows and other Jews who own residential dwellings and accommodations in Judea and Samaria but are unable to rent residential dwellings or accommodations through Airbnb as a result of the Airbnb Discriminatory Policy..

95.     By adopting the Airbnb Discriminatory Policy, Defendants, and each of them, including Defendant Airbnb, have discriminated against the Shapiros, Taubman, and other Jews based on their religion and national origin, in violation of the Unruh Civil Rights Act, by discriminating against the Shapiros, Taubman, and other Jews who wish or intend to travel to Judea and Samaria and are unable to rent residential dwellings or accommodations through Airbnb as a result of the Airbnb Discriminatory Policy.

96.     As a direct and proximate result of the violation of the Unruh Act by Defendants, and each of them, and as a result of the facts alleged herein, Plaintiffs have suffered and will continue to suffer damages in an amount not yet ascertained, in addition to other and as yet unascertainable damages.  Plaintiffs will seek leave of this Court to amend this Complaint when the amount of its damages has been precisely ascertained.

**FOURTH CLAIM FOR RELIEF**

**(Violation of California Unfair Competition Law –**

**Cal. Bus. & Prof. Code § 17200 *et seq.* against All Defendants)**

97.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

98.     The acts and practices of Defendants, and each of them, as alleged herein, constitute unfair, unlawful and fraudulent business acts and practices within the meaning of Sections 17200 *et seq.* of the California Business and Professions Code.

99.     Defendants have engaged in unfair business acts and practices in that the harm caused by their fraudulent conduct outweighs any utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, and causes substantial injury to Plaintiffs and to other Jews affected by the Airbnb Discriminatory Policy.

100.     The above acts and practices have caused, and are causing, injury to Plaintiffs. Plaintiffs have suffered injury in fact and have lost money and property as a result of such unfair competition.

101.     Plaintiffs seek an injunction prohibiting Defendants, and each of them, including defendant Airbnb, from further engaging in such unfair business acts and practices.  Plaintiffs further seek an order of restitution and/or disgorgement from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants, and each of them, as follows:

(1)     For damages according to proof at trial, plus interest thereon at the maximum rate provided by law;

(2)     For a declaration that the conduct of Defendants, and each of them, violates the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

(3)     For a declaration that the conduct of Defendants, and each of them, violates California's Fair Employment and Housing Act;

(4)     For a declaration that the Airbnb Discriminatory Policy violates the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

(5)     For a declaration that the Airbnb Discriminatory Policy violates California's Fair Employment and Housing Act;

(6)     For a declaration that the Airbnb Discriminatory Policy violates California's Unruh Civil Rights Act;

1       (7)     That Airbnb and its officers, directors, agents, servants, employees,

2 representatives, successors, and assigns, and all persons acting in concert or participation with

3 them, be temporarily, preliminarily, and permanently enjoined from: (a) enforcing the Airbnb

4 Discriminatory Policy; and (b) continuing to discriminate against Plaintiffs and other Jews and

5 Israelis in the provision of Airbnb's platform and services;

6       (8)     For pre-judgment interest according to proof at trial;

7       (9)     For costs of suit incurred herein, including attorneys' fees to the extent applicable;

8 and

9       (10)    For such other and further relief as this Court may deem just and proper.

10

11 Dated:  January 22, 2019          LAW OFFICES OF DAVID N. SCHULTZ

12                          ZELL & ASSOCIATES INTERNATIONAL

13                          ADVOCATES LLC

14

15                          By:      /s/ David N. Schultz

16                               David N. Schultz

                               *Attorneys for Plaintiffs Eve Harow, Earl*

17                         *Harow, Fay Shapiro, Neal Shapiro, and Joel*

                             *Taubman*

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury on all issues so triable, pursuant to Rule 38 of the

3

Federal Rules of Civil Procedure.

4

Dated:  January 22, 2019                        LAW OFFICES OF DAVID N. SCHULTZ

5

ZELL & ASSOCIATES INTERNATIONAL

6

ADVOCATES LLC

7

8

By:        /s/ David N. Schultz

9

David N. Schultz

Attorneys for Plaintiffs Eve Harow. Earl

10

Harow, Fay Shapiro, Neal Shapiro, and Joel

Taubman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**